*In re* MARRIAGE OF MARY ANN ROGERS, Petitioner-Appellee, and ROBERT ROGERS, Respondent-Appellant.

Second District   No. 79-678

Opinion filed July 25, 1980.

Gerald M. Sheridan, of Wheaton, for appellant.

John T. Perry, of Vescelus & Perry, of Wheaton, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Robert Rogers (husband), appeals from an order of the Circuit Court of Du Page County dissolving his marriage with petitioner, Mary Ann Rogers (wife). No issue has been raised concerning the

dissolution of marriage itself. Instead the husband challenges the distribution of the parties' property, the award of maintenance, and the payment of attorney's fees.

The wife filed a complaint for divorce in 1976. An amended petition for dissolution of marriage was filed in 1977. The parties were married in 1956 and therefore had been married approximately 21½ years at the time of the hearing. They have two children, a daughter 20 years of age and a son 18 years of age. Both children reside with the wife in the family residence in Wheaton, Illinois. The daughter works full time. The son works part time and planned to attend the College of Du Page. The wife is a recovered alcoholic. At the time of the hearing, she had not had a drink in five years. The wife has some typing skills and was working part time as a typist for a local newspaper, earning approximately $51 a week. In addition, she was attending beauty school, which she expected to complete in 1978. She testified that she made approximately $8 per week in tips from beauty school customers.

The husband had been unemployed for a period of approximately eight months, from July 1977 to March 1978. At that time, he became employed by a Denver company as a manufacturing manager. He testified that his net monthly income was $1535, and that his gross yearly salary was $33,000. The family residence, in Wheaton, was held in joint tenancy. The home was built for the parties in 1971 for an original cost of approximately $71,000. The original mortgage was approximately $38,000. The wife testified that the home was valued at approximately $105,000 to $110,000 as of September 1977.

In addition to the residence, both parties owned shares of stocks in various companies. The wife stated that she owned shares of stock in Curtis-Wright, Greyhound and Edison Company. She testified that the value of the stock was very small, probably less than a thousand dollars. However, she did not know the exact value of the stocks. The husband testified that he owned 25 shares of stock in the MCI Corporation, which were worth approximately $1.75 a share, and 90 shares of stock in Triangle Corporation, which were worth approximately $3 a share.

During the course of the marriage, both parties also inherited some money. The wife inherited about $12,000. She testified that some of the money was kept segregated from other family assets and that some of it went into the family. She further testified that approximately $600 remained from the amount that was kept segregated. The wife stated that she used the money for expenses during the past year, including mortgage payments and real estate taxes. The husband inherited approximately $65,000 in cash and securities in 1967. As an offer of proof, he testified that approximately $30,000 went into real estate, approximately $8,000 went to capital gain taxes, and between $5,000 and $8,000 went into various

expenses, such as furniture. The husband further testified that as of 1974, the total inheritance was gone.

After a hearing regarding the parties' respective property rights, the trial court issued a memorandum which provided in substance as follows:

1. The marital residence was to be sold within three years of the date of entry of judgment. The wife had the right to remain in possession until the property was sold, and had the right to purchase the husband's share of the property. The wife was responsible for mortgage payments, taxes, etc.; the husband's interest in the marital residence was set at $20,000 with interest compounded at the rate of 7% annually;

2. The household furnishings were to be the sole and exclusive property of the wife;

3. Husband was required to pay to the wife the sum of $500 per month for a period of three years from the date of judgment as maintenance;

4. Husband was ordered to contribute to the son's college expenses;

5. Husband was assigned his shares of stock in the MCI and Triangle Corporations;

6. Husband was ordered to pay the wife's attorney's fees of $3,500;

7. Husband was ordered to pay any arrearage in support.

The husband filed a motion to re-open proofs, alleging that the valuation of the family residence was outdated and inaccurate. The trial court denied the motion and entered a judgment order which embodied the substance of its earlier memorandum. The husband then moved to vacate or modify the judgment. That motion was denied and this appeal followed.

I.

The husband's first contention on appeal is that the trial court erred in failing to assign to him, from the proceeds of the sale of the family residence, his investment from his nonmarital funds together with appreciation. He asserts that he exchanged a definite amount of his separate, nonmarital inheritance funds for a nonmarital interest in the residences. He further asserts that both he and his wife had had numerous conversations about keeping their respective inheritances separate and that he never intended that his inheritance be converted to marital property, even though he used a portion of it to make a down payment on the Wheaton house and a previous residence in Colorado.

■■ We find that the trial court was correct in its distribution of the proceeds of the sale of the family residence. Husband contends that he expressed an oral intention that his inheritance remain nonmarital

property. While the wife never directly refuted this contention, she stated in rebuttal that she and her husband had never agreed that their respective inheritances would remain separate, nonmarital property. Moreover, the fact that a portion of the husband's inheritance was commingled with marital funds from the proceeds of the sale of a previous residence in Michigan in order to make the down payment on the Colorado house, and the fact that both the home in Colorado and the home in Wheaton were in joint tenancy, support a finding that the residence in Wheaton is marital property within the provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 503.) Under section 503(b), the present home is presumed to be marital property and in our view the husband has not overcome this presumption. *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 385, 399 N.E.2d 1006, 1008; *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859; *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517.[1]

## II.

As we have found that the trial court correctly characterized the family residence as marital property, we need not reach the husband's next contention, to the effect that he is entitled to appreciation attributable to his investment in the Wheaton residence.

## III.

■■ The third issue raised by the husband is whether the trial court properly divided the marital property. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act provides that the trial court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) After reviewing the record, we cannot say that the trial court erred in dividing the marital property. The parties were married for 21 years. The wife is a recovered alcoholic. At the time of the hearing she was attending beauty school, and expected to finish school in September 1978. During this time, she was working part time as a typist, earning approximately $51 per week. On the other hand, the husband was apparently in good health and had an annual salary of $33,000 per year at

---

[1] We are well aware that there is a split of authority as to whether or not the failure to segregate nonmarital property "transmutes" that asset into marital property. (Compare *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963 with *Smith*; see also Rooney, *Marital Property: Conflicting Appellate Views*, Institute Report, Chicago Daily Law Bulletin, July 1, 1980, p. 3.) We continue to adhere to the view that in a case like the instant one, a transmutation occurs. See *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018; see also Kalcheim, *Intention Controls: The Theory of Transmutation—The Effect of Placing Property Which was Initially Non-Marital into Joint Tenancy; the Theory of Commingling—The Effect of Intermingling Marital and Non-Marital Funds*, 68 Ill. B. J. 320 (1980).

the time of the hearing. Further, the wife was awarded maintenance for only a limited period of time. The husband is correct in his contention that his contribution of his inheritance to the family residence is a factor to be considered in any division of that property. (See Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1).) However, in light of the other factors present, we conclude that the trial court's division of the marital property was equitable.

## IV.

The husband's next contention is that the trial court erred in refusing to re-open the proofs. The purpose of the motion to re-open proofs was to present an appraisal which indicated that the value of the marital residence was higher than the figure used in the trial court's opinion. The husband attached the appraisal to his motion. The appraisal was dated August 18, 1977, and indicated that the selling price of the family residence would be approximately $139,000.

The hearing regarding property distribution was held on August 8 and 9, 1978. During the course of the hearing, the wife testified that the value of the family residence was $105,000 to $110,000 based on a September 1977 appraisal. The husband did not offer his appraisal during the course of that hearing, although it obviously was available to him as it was dated the previous year. Under these circumstances, the trial court did not abuse its discretion in denying the motion to re-open the proofs.

## V.

The husband's fifth contention is that the trial court erred in requiring him to pay the wife's attorney's fees. The trial court awarded attorney's fees of $3,500 to the wife's attorney to be paid by the husband. In a dissolution proceeding an award of attorney's fees is left to the sound discretion of the trial court, reversible only for an abuse of discretion. Generally, in order to justify the allowance of attorney's fees, the party seeking relief must show financial inability to pay and the ability of the other spouse to pay. *In re Marriage of Pederson* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659; Ill. Rev. Stat. 1977, ch. 40, par. 508(a).

At the time of the hearing, the husband's net monthly take-home pay was $1535. The wife was working part time as a typist, earning $51 per week, and in addition received approximately $8 a week in tips from her beauty school customers. Although the wife expected to complete beauty school in September 1978, she still had to meet the licensing requirements and find a job. The marital home was not a liquid asset. Under these circumstances, we see no abuse of discretion in the allowance of attorney's fees.

## VI.

■■ The husband's final contention is that the trial court erred in awarding maintenance. The trial court ordered the husband to pay to the wife $500 per month maintenance for a period of three years from the date of entry of judgment. It appears from the record that the trial court awarded maintenance for that period of time to allow the wife to become established in her new career. At the time of trial, the wife was earning only $59 per week. Further, the only other substantial asset which the wife owned was the right to a portion of the proceeds of the sale of the family residence which was to occur within three years from the entry of judgment. Therefore, the trial court did not err in awarding maintenance to the wife for that three-year period.

For the foregoing reasons, the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and WOODWARD, J., concur.